# Janes *versus* Scott *et al.*

1. The defendant guarantied that Burke should fulfil a contract for sinking an oil-well, Burke did not fulfil the contract. It was not necessary to liquidate the damages by a suit against Burke before proceeding on the guaranty.

2. When the principal is insolvent at the maturity of the debt, neither judgment and execution, nor demand from him, nor notice of non-payment to the guarantor, are necessary before suing the latter.

3. The object of a guaranty that the principal should perform a work requiring skill, included the accidents pertaining to the business, and the guarantor would be excusable only from those inevitable occurrences designated as the act of God.

4. The test of the solvency of the principal is what might be recoverable by process;—not what it might be supposed he would do voluntarily.

October 20th 1869.   Before Thompson, C. J., Read, Agnew and Sharswood, JJ.

Error to the Court of Common Pleas of *Erie county :* No. 125, to October and November Term 1867.

This was an action of assumpsit by William L. Scott and others against M. W. Janes, commenced December 4th 1865.   The plaintiffs declared upon a guaranty by defendant for the fulfilment of a contract of one Burke to furnish the machinery, &c., and dig an oil-well for them : they averred that Burke had not fulfilled his contract and was insolvent.

The contract with Burke was dated August 3d 1865; he was to furnish all the machinery, &c., and drill an oil-well 4½ inches in diameter, to complete it to the depth of 620 feet, and to test it by pumping one week, and if then the well had to be dug deeper than 620 feet, the additional digging was to be prosecuted by Burke at $6 per foot, he running all risks, and the test pumping to be done after the additional drilling; all the machinery, &c., to be furnished at Burke's cost, and delivered to the plaintiffs

on or before the 20th of September 1865. The plaintiffs were to pay $6100, $3850 when the machinery, &c., should be on the ground, and the balance to be paid as the well went down at the end of each 50 feet; the plaintiffs reserving 25 per cent. until the completion of the contract, when the whole was to be paid. It was further stipulated that unavoidable accidents should be allowed for in computing the time for the completion of the well.

The guaranty was as follows :—

"For a valuable consideration to me in hand paid, I guaranty to said second parties, their executors, &c., that said Burke shall well and faithfully perform his part of the foregoing contract.
                                                    "M. W. JANES."

Burke was examined as a witness. He testified that he furnished the machinery, which cost him a little more than the first payment on the contract, and drilled 560 feet; on the 4th of October his tools got fast; he hired two skilful and experienced "tool fishers" to help him, and paid them $100; they could not get them out, and gave it up; he left the work on the 20th of October; he asked the agent of the plaintiffs for more money to help to get the tools out; the agent told him if he could not stay, to put it into the hands of some good man; he went to the well, got sick, and assigned his contract to another man. He further testified that he was then not worth any property but a horse, had between $400 and $500 in money, was not in debt, had no judgments, and had always paid his debts; the plaintiffs retained 25 per cent. out of the money he had earned; and that he had received $1370 in addition to the first payment, but had drilled 60 feet for which nothing•had been paid.

There was other evidence of the efforts made by Burke, and that he did all that could be done to get the tools out. On the 4th of December 1865 the agent of the plaintiffs gave Burke notice that as he had neglected to drill the well according to the contract, they would take possession of the premises, complete the well at his expense, and hold him responsible for all damages accruing for the non-fulfilment of his contract.

Three of the defendants' points were the following :—

2. The action being brought for damages for the non-compliance, on the part of Burke, with the contract with the plaintiffs upon the guaranty of the defendant, the amount of damages being uncertain, the plaintiffs cannot sustain this action against the guarantor until they have established the amount of damages they have sustained by an adjudication in an action against Burke, and satisfactory evidence of the inability of Burke to pay the judgment.

3. If the jury believe from the evidence that Burke was prevented from finishing the well according to his contract by an unavoidable accident, and it was not caused by or for the want

of ordinary skill or good faith, the plaintiffs cannot recover in this case.

4. If the plaintiffs are entitled to recover at all there can be no recovery beyond nominal damages, the plaintiffs not having proven any actual damages.

The court (Johnson, P. J.) charged :—

* * * " Our construction of that contract is that it is an entirety, so intended by the parties, so clearly expressed in it and proven by inference from that clause in the latter part of it, which provides for an extension of time for the completion of the job in the case of accidents, &c., that might necessarily retard the work.

" As we interpret this contract, his pay for the job was contingent upon his success in completing it. He could not do part of it, quit and ask pay for what he had done. He did not complete it. [But it is said its completion became impossible without fault of his. His rimmer stuck and could not be extracted. This is doubtless true, all reasonable effort was made to do so. But it does not follow the performance of his contract was thereby rendered impossible. There were plenty of room and opportunity to start and sink another hole to the required depth. Time was to be allowed by the contract for just such a contingency. But he chose rather to forfeit the contract and abandon the work. The hole he made and the work he did was of no use or value whatever to the plaintiffs. He was therefore entitled to nothing for it. The plaintiffs were not bound to accept or pay anything for a hole part dug and then spoiled.]

" Nor am I prepared to say that if the accident was inevitable and had rendered his performance of his contract impossible, that he would have been relieved from the operation of the same risk. But as no such impossibility existed, the question does not arise.

[" It is also argued on behalf of Burke, that he had not been paid up in full for the work he had done, and therefore had a right to quit and throw up the contract. It is enough to say, in reply that he made no such allegation and gave no such reason for quitting. Though a witness on the stand, he does not pretend there was money due him and withheld, or demanded and refused. He says he quit because his tools were fast, and he got out of funds and was discouraged. It is therefore unnecessary to go into any calculation to see whether he had been overpaid, as claimed by the plaintiffs, or had done work in excess of the payments made, as alleged by the counsel for the defendant.]

[" The whole amount received by him was $5220, out of that he is entitled to credit for whatever he expended for engine, tools and derrick. Whether that was more or less than the $3850 paid in hand for that purpose, the jury must determine.

[Janes v. Scott.]

"For the balance, whatever it is, the plaintiffs would be entitled to recover a verdict, if this suit was against Burke.]

["Are the plaintiffs entitled to recover it against the present defendant? His undertaking was also a contingent one, depending upon Burke's ability to pay the amount of his liability when this suit was brought. He testifies that he had no property except a horse, value not given. It is not unfair to presume the exemption laws would have protected that. He had $400 of money, the proceeds of his labors in previous times, and no part of that received from plaintiffs. That could not have been seized without his consent.

"If a judgment had been recovered against him, would an execution for the amount of this claim, ranging from $1370 to $2000, or whatever sum you find the plaintiffs entitled to recover, have probably been paid, or could its collection have been forced? These are questions entirely for the jury. If such an effort would have been fruitless then the law does not require it to be made. The question of his solvency is not confined to his ability to pay his other debts. But was he solvent for the payment of this claim. If so, this action cannot be sustained. If not, the suit was rightly brought against the present defendant, as his guarantor, without any previous proceedings against Burke.] The law, as understood by us and already stated in our general charge, requires us to answer the defendants 2d, 3d and 4th points in the negative, and to give our approval to the first one."

The verdict was for the plaintiffs for $1527.55.

The defendant took a writ of error. He assigned for error the answers to his points and the several parts of the charge included in brackets: The last part being the 8th assignment.

*J. C. Marshall* and *J. H. Walker*, for plaintiff in error.— The plaintiffs should have liquidated their damages by a suit against Burke: Hoffman v. Bechtel, 2 P. F. Smith 193; Kramph v. Hatz, Id. 525; Brown v. Brooks, 1 Casey 210; Kirkpatrick v. White, 5 Id. 176; Gilbert v. Henck, 6 Id. 205; Stark v. Fuller, 6 Wright 320. The accident was unavoidable and was a defence: 2 Parsons on Cont. 184.

*B. Grant*, for defendants in error.—The guaranty was to answer for Burke's failure to perform his contract, without regard to the cause. The insolvency of the principal may be shown by any legitimate evidence.

The opinion of the court was delivered, October 29th 1868, by Thompson, C. J.—We entirely agree with the learned judge below, that the guaranty of the defendant, the plaintiff in error, was not a guaranty of mere skill and fidelity on part of Burke,

the contractor, distinct from, or independent of, performance, but that it was for the substantial completion of the contract according to its terms *ex visceribus suis.* This is imported in the terms used in the contract, viz., "that the said Burke shall well and faithfully perform his part of the foregoing contract." The contract distinctly provides for what was to be done. If anything be needed to sustain this interpretation of the words, it will be found in the clause in the contract inserted for the benefit of the contractor,—"unavoidable accidents, to be allowed for in computing the time for the completion of the well." If only skill and fidelity were guarantied, this would be an unmeaning provision, for nothing more than the exercise of these qualities by Burke would have been required, and he could abandon the work without completing it if he had fully exercised them. If the contract had been for skill and fidelity, the words used would only have extended to that, it is true; but it was for more—it was for the complete performance of a contract that Burke bound himself, and the guaranty was that he should well and faithfully complete it, and if unavoidable accidents should occur, time should be allowed in addition to the contract time for doing and completing the work. There was no error, therefore, in thus construing the guaranty.

2. The next question we shall notice is that raised in the defendant's 2d point. The court below decided that correctly beyond doubt. The plaintiffs below were not bound to liquidate their damages by reason of the failure of Burke to perform his contract, by a suit against him, before proceeding on the guaranty of the defendant. They could do this by proceeding directly on the contract of guaranty, as was done, setting forth in their *narr.* the failure on part of Burke to perform according to contract, and showing due diligence on their part to obtain redress from him, or such facts as would negative the idea of negligence in this particular. One way of establishing due diligence undoubtedly is by suit against the principal without remunerative results, and it is often the most conclusive. But this is usually for a different purpose than the liquidation of the claim. I have examined very many precedents in our books on this point, and I find quite as many cases in which suit on the contract of guaranty was the first step, as when suit was brought against the principal first. In Brown *v.* Brooks, 1 Casey 210, it is said, "when the principal debtor is insolvent at the maturity of the debt, no such proceeding (as judgment and execution), is necessary as a foundation to an action on the guaranty. Nor is it necessary in such a case to show even a demand on the principal debtor and notice of non-payment given to the guarantor. This was decided in Gibbs *v.* Cannon, 9 S. & R. 292." We need not cite further authorities to prove this doctrine. This error is not sustained.

[Janes *v.* Scott.]

3. We also think the learned judge was right in instructing the jury in the negative of the defendant's 4th point, which was—that the plaintiffs were only entitled to receive nominal damages, if anything. Of course, if the principal failed of performance, the guaranty was to indemnify to the extent of the loss the plaintiffs had suffered. If any recovery could be had at all, there was nothing in the case, so far as we can discover, to reduce the same to nominal damages. The guarantor would not be excused from liability excepting from those inevitable occurrences which are designated in law as the act of God. The accidents pertaining to the business—mechanical results—were the object of the guaranty. Burke undertook to do the work in the face of such contingencies as did happen, and agreed that he would perform notwithstanding, and the defendant guarantied his doing it. The principal failed to perform, and abandoned the contract. The guaranty was therefore broken. The loss of the plaintiffs was, at the very least, what they had paid him, and this the court held the plaintiffs might recover. There was no error in this.

4. The last matter we shall notice, is embraced in the 8th assignment of error. In substance, that is a complaint against the charge on the question of insolvency. Burke, the principal, being called as a witness by the plaintiffs, as we understand it, testified that at the time he abandoned the work, he had a horse (value not stated) and $400 or $500 in money. How long he remained the owner of either was not stated. It was left as a question of fact to the jury on this evidence, to say whether or not the plaintiffs would have been able by process to have recovered against him their damages; that is, such damages as the jury should be of opinion the plaintiffs had sustained, if they had pursued him. The test would obviously be what might be recovered by process. They could not predicate a verdict of what they might suppose he would do voluntarily. This would be too uncertain. There is no legal presumption on the subject which would stand for proof. His character for honesty, and the fact that he had always paid his debts, would not be sufficient to establish solvency without evidence of property. The term itself implies ability to pay, not mere disposition to pay. It was, therefore, not improper for the court to refer the jury to the existence of the exemption law, and the fact that the money in the pockets of the principal could not be seized, to enable them to determine whether, by process against Burke, the plaintiffs could have indemnified themselves from him for their loss. If they could not, he was insolvent. The plaintiffs were not bound to do a vain thing, and pursue him if he had no property which was available. If he was solvent, the court told the jury the action could not be maintained against the guarantor—if he was not, it could. The jury found for the plaintiffs, and must therefore have found him

[Janes *v.* Scott.]

insolvent for all purposes of suit and process. We think this error is not sustained, and seeing nothing in any of the other specifications of error not specially noticed, we think this judgment ought to be affirmed.

Accordingly, judgment affirmed.

SHARSWOOD, J., dissented as to 8th assignment of error.