IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

MIDDLE DISTRICT—HARRISBURG, 1885.

## Coe and Richmond *versus* Buehler.

1. One who guarantees the fulfillment of a contract, which had not yet been executed or accepted by the parties intending to give credit on the guarantee, is entitled to notice of the acceptance thereof; and, in the absence of such notice, he is not liable on his guaranty.

2. Such notice will not be presumed from the fact that the guarantor must have been aware that goods were furnished after the guaranty had been signed. Especially is this the case, when there had been previous business relations between the parties to the contract to which the guaranty was given, and there was no visible notice of a change in their relations.

June 1st, 1885. Before Mercur, C. J., Gordon, Trunkey, Sterrett, Green and Clark, JJ. Paxson, J., absent.

Error to the Court of Common Pleas of *Adams county:* Of May Term 1885, No. 7.

Assumpsit, by E. Frank Coe and James Richmond, trading as Coe and Richmond, against Charles H. Buehler, on a written guarantee by the said Buehler for the faithful fulfillment of a contract entered into by James Bigham with the plaintiffs. Pleas, non assumpsit, payment, payment with leave, etc.

On the trial the following facts appeared: Coe and Richmond, the plaintiffs, are a Philadelphia firm engaged in the manufacture and sale of fertilizers, and James Bigham, residing in Gettysburg, sold their phosphate. Prior to 1877 he bought the phosphate from the firm and sold it on his own account. In August, 1877, he commenced receiving phosphate from them on consignment account and selling it for them as their

(366)

[Coe *v.* Buehler.]

agent or bailee.   At that time he owed them a balance on his individual account of about three thousand dollars.

James Bigham not making returns promptly of sales made by him on consignment account, and there being a large amount not accounted for, the firm, in February, 1879, sent an agent, Francis Danzenbaker, to Gettysburg to examine into their business in Bigham's hands, and to arrange to secure future consignments.   This agent found a large amount of accounts outstanding, sufficient when collected probably to liquidate the consignment account.   He then prepared an agreement whereby Coe and Richmond appointed James Bigham as agent for the sale of their phosphate, to net said Coe and Richmond $35 per ton on the basis of four months, on board of cars at their works at Point Breeze, Philadelphia.

This contract, which applied to " the season of 1879, to be continued by mutual consent," was executed by Bigham on February 21st, 1879.   On the same day, Danzenbaker called on Buehler and, before the signature of Coe was affixed to the contract, secured Buehler's signature to a guaranty of this contract in the following form :

" In consideration of one dollar, to me in hand by Coe and Richmond, the receipt of which is hereby acknowledged, I hereby guarantee the fulfillment of the within contract, and the faithful performance of the above instructions on the part of the said James Bigham.               C. H. BUEHLER."

Witness : FRANCIS DANZENBAKER.

Phosphate was consigned by the plaintiffs by the car-load to James Bigham, at Gettysburg, under the terms of this agreement, during the summer and fall of 1879, to the amount of $6,162.   Remittances were made by Bigham during the same time from collections made, both on account prior to February, 1879, and also subsequently thereto.   These remittances were always credited as directed by Bigham.   Sometimes he would direct the credit to be made on the old consignment account and it was so done, and sometimes to the new account and it was so done.   Where no direction was given the credit was applied by the plaintiffs to the old account until it was extinguished.   The total amount of payments made on the consignment account under the agreement on which defendant was surety was $2,708.16, leaving a balance owing on the phosphate shipped to Bigham during the summer of 1879, under this agreement, of $3,453.84.   The total amount of payments during the year 1879, had they all been applied to the consignments of that year, would have more than paid for them.

Bigham continued dealing with the plaintiffs, and having

failed to account for the above balance, suit was brought against him for this and other indebtedness to the plaintiffs.

Defendant was first notified of shipments and default of plaintiff on February 16th, 1882, about three years after he had signed the guaranty.

On March 20th, 1883, plaintiffs recovered a judgment against Bigham for $9,151.95 and issued execution on the same, on which a return was made by the sheriff of no property of defendant real or personal subject to levy.

Plaintiffs then brought this action against Buehler on his guaranty and gave in evidence the above contracts and their efforts to collect from Bigham. No evidence was given to show that Buehler had ever received any notice from any one of the agreement and guaranty.

It was, however, attempted to establish this from the fact that Bigham had his office and conducted a portion of his business in the same building with Buehler. At the conclusion of plaintiffs' evidence, defendant moved for a nonsuit for the following reasons:    (1.) It appearing from the evidence introduced by the plaintiffs and the book of entries of Coe & Richmond, that there were remittances by James Bigham to Coe & Richmond on the consignment account of 1879, on which this suit is based, in excess of said consignment account as set forth in plaintiffs' declaration and as proved, plaintiffs have failed to make out a prima facie case.    (2.) There was no notice, and no offer to prove notice, by plaintiffs (or by any person for them) to the defendant of the acceptance by the plaintiffs of the guaranty on which this suit is based, and no knowledge and no offer to prove knowledge by or on the part of the defendant of such acceptance.    (3.) There was no notice, and no offer to prove notice, by plaintiffs, (or by any person for them,) to the defendant of any consignments of phosphates on the faith of the guaranty on which this suit is based, and no knowledge or proof of knowledge by defendant of such consignments.    (4.) There was no notice to defendant, and no offer to prove notice to defendant, of any default on the part of Bigham on the consignment account of 1879, for more than three years after the signing of the guaranty on which this suit is based, and no proof of insolvency of James Bigham, the principal, until the 21st day of March, 1883—four years after the execution of said guaranty.

The court, after argument, entered judgment of nonsuit and, subsequently, refused a motion to take off the same.

Plaintiffs then took this writ, assigning for error the entry of the judgment of nonsuit and the refusal of the motion to take off the same.

[Col v. Buehler.]

*David Wills*, for plaintiffs in error.—The plaintiffs by issuing a fi. fa. and securing a return of "nulla bona," did all that the law required of them in favor of the guarantor: Gilbert *v.* Henck, 6 Casey, 205; Kirkpatrick *v.* White, 5 Id., 176; Hoffman *v.* Bechtel, 2 P. F. S., 190; Building Association *v.* Lichtenwalner, 4 Out., 100.

The court in taking the case from the jury, and entering a judgment of nonsuit on the ground that the plaintiffs had not used due diligence, usurped the province of the jury. This question of what is due diligence is a question of fact under all the circumstances of the case: Rudy *v.* Wolf, 16 S. & R., 79; Johnston *v* Chapman, 3 P. & W., 18; Woods *v.* Sherman, 21 P. F. S., 100.

In a motion for a nonsuit every inference of fact must be drawn in favor of the plaintiff: Smyth *v.* Craig, 3 W. & S., 14, and if there is a slight inference favorable to plaintiff, the case should go to the jury: Bevan *v.* Ins. Co., 9 W. & S., 187; Maynes *v.* Atwater, 7 Norris, 496; Miller *v.* Bealer, 12 W. N. C., 234.

Mere delay by a creditor to proceed against a principal will not of itself discharge a guarantor; Stark *v.* Fuller, 6 Wright, 320.

*J. C. Neely* (*D. A. Buehler* with him), for defendant in error.—The failure to prove insolvency of the principal debtor for four years after the contract of guaranty was signed was fatal to plaintiffs' case: Johnston *v.* Chapman, 3 P. & W., 18; Brown *v.* Brooks, 1 Casey, 210; Reigart *v.* White, 2 P. F. S., 438.

Being a guarantor for future credits, Buehler was entitled to notice of acceptance, of consignment or delivery, and the amount thereof, and of default within a reasonable time, unless it appears affirmatively that the principal was insolvent: Bay *v.* Thompson, 1 Pearson, 551; Unangst *v.* Hibler, 2 Casey, 150; Kellogg *v.* Stockton & Fuller, 5 Casey, 460; Kay *v.* Allen, 9 Barr, 320; 2 Parsons on Contracts, pages 12, 13, 14, 15, 28, 29, 662; 2 Story on Contracts, §§ 873, 853, 864; 1 Parsons on Contracts (edition 1855) 501,* 502,* note *z.*

The opinion of the court was filed October 5th, 1885.

PER CURIAM:—The absence of notice of acceptance by the plaintiffs to the defendant, is fatal to their claim. When the defendant signed the guaranty it was his proposition only. The contract which he proposed to guarantee had not been executed or accepted by the plaintiffs. True, they did execute it soon afterwards, yet they gave no notice thereof to the defendant. It is urged, inasmuch as the evidence shows Bigham obtained

14 OUTERBRIDGE—24

[Ott *v.* Kreiter.]

phosphate of the plaintiffs after this time, of which the defendant must have had knowledge, this created presumptive notice of acceptance. ' Such presumption is negatived by the fact that for a long time prior to the making of the proposition by the defendant Bigham had been obtaining phosphate from the plaintiffs, and there was no visible notice to an observer that it was thereafter obtained under any new arrangement. Defendant was entitled to notice of acceptance within a .reasonable time. This he did not get.

Judgment affirmed.