## Pittsburgh Terminal Coal Corporation *v.* Robert Potts, Appellant.

*Judgments—Leases—Confession—Amicable action.*

In an amicable action of ejectment and confession of judgment therein under authority conferred in a lease, it is essential that the defendant shall have agreed that the proposed action shall be amicable as distinguished from adverse. He must therein confess, or authorize his attorney to confess for him, such judgment as the plaintiff would be entitled to recover in the event of a successful termination of similar adverse proceedings. Just how the action shall be commenced and entered in the court having jurisdiction is immaterial, provided the defendant has agreed to the commencement of the action and the confession of a judgment therein.

The validity of the judgment confessed does not depend upon conformity with the act of June 13, 1836, P. L. 572, or upon the precise words by which the attorneys have undertaken to express the agreement for the entry of the action, but upon the authority given the attorney for the lessee to sign such an agreement and to confess such a judgment. Such judgments are not statutory but were well known at common law. The filing with the prothonotary of an agreement that an amicable action in ejectment be entered is sufficient at common law, and such judgment as the parties have agreed upon may be entered thereon.

*Leases—Corporations—Merged Corporations—Act of May 3, 1909, P. L. 408—Act of April 29, 1915, P. L. 205.*

A corporation formed by the merger of other corporations succeeds to all the rights of action of the merged companies, and is the legal successor thereto. All rights held by one of the constituent companies as lessor under a lease are vested in the merged company as the legal successor of the original lessor.

Argued October 6, 1927. Appeal No. 75, April T., 1928, by defendant from judgment of C. P. Allegheny

County, July T., 1927, No. 2744, in the case of Pittsburgh Terminal Coal Corporation v. Robert Potts. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmed.

Rule to strike off judgment. Before MACFARLANE, J.

The facts are stated in the opinion of the Superior Court.

The Court discharged the rule. Defendant appealed.

*Error assigned,* among others, was the decree of the Court.

*O. K. Eaton,* and with him *W. H. Coleman,* for appellant.

*Thomas Patterson,* of *Patterson, Crawford, Arensburg & Dunn,* for appellee.

OPINION BY CUNNINGHAM, J., November 21, 1927:

By this appeal we are called upon to review the action of the Court of Common Pleas of Allegheny County in refusing to strike off, at the instance of Robert Potts, defendant below and appellant herein, the judgment confessed against him in the course of an amicable action of ejectment entered in that court June 8, 1927. The action was entered and judgment confessed by appellant's attorney, *pro hac vice,* acting under the authority alleged to have been conferred upon him by the provisions of a certain lease signed by appellant as the lessee therein. The lease was executed October 1, 1922, at which time appellant was an employe of the Pittsburgh Terminal Railroad and Coal Company, the lessor, and demised a dwelling house upon its premises, known as No. 101. The term was "a period of one month" from its date "and for such time in addition to the said one month, from month to month, as the said Robt. Potts shall continue

in the employ of the said coal company." The lease contains, inter alia, the following covenants on the part of the lessee material to the present inquiry: "That within five days after the termination of his employment with the said coal company, or within five days after a notice from the said coal company that his services are no longer required, he will yield up and deliver quiet and peaceable possession of the premises to the said coal company" etc., and that "in case possession be not surrendered at once within five days after the termination of the employment of the said lessee, ........ it shall be lawful for any attorney, and he is hereby duly authorized and empowered, to sign as attorney of the said lessee, an agreement for entering in any court having jurisdiction an amicable action of ejectment, and therein to confess judgment without stay of execution against the said lessee, him or them, for the recovery by the said lessor of the possession of the said premises; and thereupon the proper and usual writs of execution may issue forthwith without any prior proceedings, and the said lessee hereby releases all errors and defects in the entering of such action and judgment, and in any proceeding thereon or connected therewith, and waives all right to error, objection or exception thereto and the benefit of all exemption laws exempting property to any amount or value from levy and sale." During the continuance of the lease the corporate name of the lessor was changed to Pittsburgh Terminal Coal Company. Subsequently, it and the Meadow Lands Coal Company were merged and consolidated into Pittsburgh Terminal Coal Corporation, the appellee in this appeal. This last mentioned corporation contends that it is legally entitled to exercise all the rights and privileges conferred by the lease upon the original lessor.

On April 29, 1927, appellee gave notice to appellant that his services were no longer required by it and

notified him to yield up and deliver, pursuant to the provisions of the lease, quiet and peaceable possession of the premises within five days. Appellant having declined to surrender possession of the premises, the following agreement was signed on June 8, 1927, by the attorney for the lessor and the attorney, *p. h. v.*, for the lessee and filed of record on that date with the prothonotary of the court below at No. 2744, July T., 1927, under the caption, Pittsburgh Terminal Coal Corporation v. Robert Potts: "And Now, June 8, 1927, it is hereby agreed that an amicable action of ejectment be entered by the Prothonotary of the Court of Common Pleas of Allegheny County, for all those certain premises situate in Castle Shannon Boro., Allegheny County, Pennsylvania, being known and designated as house No. 101, at Mine No. 2 on the premises of the said Pittsburgh Terminal Coal Corporation, and occupied by the above named defendant, with the same force and effect as if a summons in ejectment had been issued by the plaintiff against the defendant returnable to the first Monday of July, and had been duly returned 'served.' " Contemporaneously with the filing of this agreement a declaration, verified by affidavit, was filed pleading the lease, the termination of the employment, the service of the notice to quit, and the refusal of defendant to surrender possession, and averring that the right of possession and title is in plaintiff but defendant unlawfully and unjustly retains the possession. To the declaration were attached as exhibits copies of the lease and notice to quit. Thereupon the attorney *p. h. v.* for defendant, stating that he was acting "by virtue of the provisions" of the lease, confessed judgment in ejectment in favor of the plaintiff and against the defendant for the premises, without stay of execution, and a writ of *hab. fa.* was issued thereon.

Upon defendant's petition alleging that the proceed-

ings were irregular and illegal the court below stayed
the execution and granted a rule to show cause why the
judgment should not be stricken off. Plaintiff answered
that the entering of the action and confession of judg-
ment were regular and legal. No issues of fact were
raised and after argument the court below, sitting in
banc, entered an order, supported by an opinion writ-
ten by MACFARLANE, J., refusing to strike off the judg-
ment and discharging the rule. This appeal followed
and by the single assignment this order is assigned for
error. Shortly after the appeal had been perfected the
appellee moved in this court for its dismissal upon the
ground that appellant "has in his lease waived his
right to appeal." Appellant filed an answer and we
directed that argument be had on this motion along
with the argument on the merits. That a lessee may,
by clear and appropriate language in his lease, waive
the right to have a judgment entered against him under
its provisions reviewed by an appellate court cannot
be doubted: Seagrave v. Lacy, App., 28 Pa. Superior
Ct. 586; Groll v. Gegenheimer, App., 147 Pa. 162. We
have concluded however that the motion to dismiss this
appeal should not be granted. The phraseology of
the lease with respect to the alleged waiver of the right
to appeal is unusual. Quite frequently leases authorize
in one form or another the entering of amicable actions
of ejectment and the confession of judgments therein
and then further provide that "no writ of error or ex-
ception or objection shall be made or taken thereto."
In the decided cases substantially this language was
used, but in this lease it is stipulated that the lessee
"waives *all right to error,* objection or exception
thereto" etc. Whether the draftsman of this lease in-
advertently used the phrase "right to error" instead
of "writ of error" we have no means of knowing. In
any event we are not disposed to hold that appellant,
under the peculiar phraseology of this lease, has

waived his right to appeal and the motion to dismiss is accordingly denied.

Proceeding to an examination of the merits it is to be borne in mind that this is an application to strike off the judgment and that an application of this kind must be grounded upon irregularities appearing on the face of the record: O'Hara v. Baum, 82 Pa. 416. Under the Act of May 20, 1891, P. L. 101, any party aggrieved by the decision of the court refusing to strike off a judgment entered by amicable confession may appeal, unless the right to have such judgment reviewed has been waived.

There is no suggestion on behalf of appellant that the notice that his services were no longer required by appellee and that he should therefore surrender possession of the house he was then occupying as its employe was not duly served upon and understood by him. Indeed, in the opening paragraph of the lease he expressly stated that he understood and agreed that the leased premises "are used and occupied by and are necessary for the use and occupancy of employes of the said coal company." No application was made to open the judgment upon the ground that the defendant had a meritorious defense which he should be permitted to make before a jury. The proceeding is one to strike off the judgment solely upon the ground of alleged irregularities in the entering of the amicable action and the confession of the judgment. Various irregularities were averred in the petition, but those pressed in this court at the argument on the merits may be thus summarized, using to a large extent the language of the learned counsel for appellant:

(a) The agreement for the amicable action is not "in conformity with statute [Section 40 of the Act of June 13, 1836, P. L. 572, 579] and within the power granted under the warrant of attorney," in that the statute provides that from the time of the entry of the

agreement "the action shall be deemed to be depending, in like manner as if defendant had appeared to a summons issued against him by the plaintiff," whereas it is provided in the agreement filed in this case that the action is entered "with the same force and effect as if a summons in ejectment had been issued by the plaintiff against the defendant returnable to the first Monday of July and had been duly returned 'served'"; (b) No judgment could lawfully be confessed prior to the first Monday of July, 1927; (c) "Having entered into and filed the agreement there was a lack of authority to enter a separate confession of judgment"; and (d) "The warrant of attorney does not authorize the entry of judgment in favor of the lessor's assigns" and therefore the appellee, the Pittsburgh Terminal Coal Corporation, cannot lawfully enforce the rights granted in the lease to the original lessor, Pittsburgh Terminal Railroad and Coal Company.

1. The objections to the regularity and validity of the proceedings summarized under the foregoing paragraphs (a), (b) and (c) may be considered together. The real question arising is not whether the amicable action was entered in strict conformity with the Act of 1836, or any other act of assembly, but rather whether the attorney who acted upon this occasion for appellant exceeded in any way the authority conferred upon him by appellant when he signed the lease. Judgments rendered in amicable actions do not depend for their validity upon conformity with the provisions of any act of assembly; such actions and judgments are not statutory but were well known at common law and Section 40 of the Act of June 13, 1836, P. L. 572, 579, is merely a recognition of an established common law practice. It is entitled "An Act relating to the commencement of actions" and, after providing for the issuing and serving of writs of summons, except where otherwise specially provided, it continues in Section 40

as follows: "It shall be lawful for any persons, willing to become parties to an amicable action, to enter into an agreement, in writing, for that purpose, either in their proper persons, or by their respective agents, or attorneys, and on the production of such agreement to the prothonotary of any court having jurisdiction of the subject matter, he shall enter the same on his docket, and from the time of such entry, the action shall be deemed to be depending, in like manner as if the defendant had appeared to a summons issued against him by the plaintiff." The section contemplates not merely actions in ejectment but any kind of an amicable action, and the distinction drawn by the act is between adverse proceedings, which were to be commenced in the manner elaborately provided for therein, and such amicable actions as any persons were willing to become parties to. Long before its approval the right of parties to agree to the entering of an amicable action and to the confession of a judgment therein had been recognized, and the validity of such judgments sustained, at common law. In the case of Cook et al. v. Gilbert, 8 S. & R. 567, decided in 1822, Gilbert had an account against Cook and Isott, which was assumed by David Cook and Henry Barton who also agreed to give judgment against themselves for it. An amicable action was entered in the Court of Common Pleas of Westmoreland County by an agreement in writing, signed by the attorney for the plaintiff and by the defendants, which agreement was headed with a statement of the account. The paper was directed to the prothonotary and provided that an amicable action should be entered and that the prothonotary should enter judgment against the defendants for the amount of the account. Upon appeal from the judgment entered by the prothonotary various errors were assigned, among others being one to the effect that an attorney had "no authority to enter an amicable action

under the Act of the 21st of March, 1806.'' In disposing of this assignment Chief Justice TILGHMAN said: ''That is a question which it is unnecessary to consider. Independently of that act, an amicable action may be entered by attorney; it has been a long and general practice.'' In discussing the other assignments of error the writer of the opinion said: ''The agreement was a sufficient authority to the prothonotary to enter an appearance of the defendants in proper person, and a confession of judgment by them for the sum mentioned in the agreement. ...... These agreements to enter amicable actions and confess judgments, need not be under seal; I have seen a great many of them, and do not recollect one under seal; I make no doubt, that thousands of judgments have been entered in this way; and they must not now be questioned.'' Again, in Moyer v. Kirby, 14 S. & R. 162, a capias in debt was issued and a plea and replication were filed but no declaration. The defendant afterwards confessed judgment. Plaintiff's counsel subsequently moved for and obtained leave to file a declaration nunc pro tunc. Upon appeal two of the errors assigned were: Entering judgment without a declaration; and permitting the filing thereof nunc pro tunc. The judgment was reversed upon other grounds not material to the present inquiry but, in disposing of the above mentioned assignments, the Supreme Court, speaking through Mr. Justice DUNCAN, said: ''The first and second specifications of error I will consider together. If no declaration had been filed, on the state of the record, I would long pause, before I reversed the judgment for that reason. It would be sweeping work, at this day, after a practice of nearly half a century, to reverse a judgment by confession for a certain sum in an action of debt. It has certainly been a common practice for parties to go to the prothonotary's office, enter an amicable action, and the defend-

ant to confess a judgment, without a declaration. This may be a practice exposing the defendant to some risk: he may find it difficult to prove the consideration of the judgment, and so plead it in bar of a subsequent action, because he does not show any cause of action, or on what account the judgment is confessed. But the usage is inveterate, and has been so long sanctioned that it would now be ruinous to overset all that has been done under it, even though the court might observe its inconvenience. The practice of every court is the law of that court, and much of the practice in this state has no other foundation than the usage itself.''

From these authoritative statements of common law principles and practice relating to amicable actions it is clear that the one essential thing is that the defendant in the proposed action shall have agreed that it shall be an amicable, as distinguished from an adverse, proceeding, and that he will therein confess, or authorize his attorney to confess for him, such judgment as the plaintiff would be entitled to recover in the event of a successful termination of similar adverse proceedings. Just how the action shall be commenced and entered in the court having jurisdiction—whether by praecipe for and the issuing of an appropriate summons, or the filing of a declaration or other pleading setting forth the cause of action, or the filing of an agreement of the parties, or their attorneys, for an amicable action—is immaterial provided the defendant has agreed to the commencement of the action and the confession of a judgment therein. The Act of 1836 provides a convenient way in which persons willing to become parties to such an action may, even without the intervention of attorneys, put their agreement for the action in writing and produce it to the prothonotary of the proper court for entry on his docket, with the result that the action shall be deemed to be depending

from such entry. But this method is not exclusive: Equipment Corporation of America v. Primos Vanadium Co., 285 Pa. 432, 437. Other methods, unless prohibited by the agreement, are just as effective.

When we look at the lease in the case at bar we find that the appellant expressly authorized and empowered "any attorney" to do two distinct things for him: First, to sign "an agreement for entering in any court having jurisdiction an amicable action of ejectment"; and second, "therein to confess judgment without stay of execution against the said lessee ...... for the recovery by the said lessor of the possession of the said premises." He did not stipulate that the amicable action should be entered in accordance with the provisions of the Act of 1836 or of any other act of assembly; nor did he stipulate that any writ should actually be served or that the judgment should not be confessed before a designated time, for instance, the fictitious return day of a supposititious writ. The language of the agreement that the action be entered "with the same force and effect as if a summons in ejectment had been issued by the plaintiff against the defendant returnable to the first Monday of July, and had been duly returned 'served' " is the language of the attorneys for the respective parties to the agreement and is not a provision of the lease itself. The foundation for the whole proceeding is the provision in the lease that the action may be entered in any court having jurisdiction and that an appropriate judgment may be confessed. The actual issuing of a writ would negative the idea of an amicable action and would indicate an adverse proceeding. Nor is it contemplated by the Act of 1836 that any writ shall issue for it is there provided that the prothonotary shall enter the agreement on his docket and from that moment the action shall be deemed to be depending "in like manner as if the defendant had appeared to a summons

issued against him by the plaintiff.'' We regard it as immaterial that the attorneys in this case agreed that the action should be deemed to be depending in like manner as if a summons had been served instead of as if the defendant had appeared to the writ. The validity of this judgment does not depend upon the precise words by which the attorneys have undertaken to express the agreement for the entry of the action, but upon the authority given the attorney for the lessee to sign such an agreement and to confess such a judgment. It was not essential that anything be stated in the agreement with respect to the manner in which the action should be deemed to be depending. The filing with the prothonotary of an agreement that an amicable action in ejectment be entered was sufficient at common law and such judgment as the parties had agreed upon could be entered therein. It is clear from the terms of this lease that the lessee authorized, upon the arising of the cause of action stated in the filed declaration, the entering of the action and the confession of the judgment forthwith or at any subsequent time. Even if it had been stipulated in the lease that a writ should actually be issued there is nothing in its terms, nor is there any general rule of law, preventing the confession of an authorized judgment prior to the return day. We are of opinion that the attorney acting upon this occasion for appellant in no way exceeded the power and authority conferred upon him under the express terms of the lease. It may also be noted that the appellant released ''all errors and defects in the entering of such action and judgment.'' In legal effect there is no difference between the entry of judgment, pursuant to a warrant of attorney, for a debt, and the entry of a judgment in ejectment, but the release of errors in connection with the exercise of the power granted under the warrant operates of course only upon irregularities in the proceeding apparent on

the record. It does not reach the defect of a lack of authority to confess the judgment (Philadelphia v. Johnson, App., 23 Pa. Superior Ct. 591, 596, affirmed by the Supreme Court 208 Pa. 645) or as stated by our Supreme Court in Curry v. Bacharach Quality Shops, Inc., App., 271 Pa. 364, such waiver and release is not a waiver of the right to have inquiry made into the power of the lessor to enter the judgment at all. Here, as we have seen, the fundamental authority to enter the action in the court below and confess the judgment is found in the provisions of the lease and the matters complained of relate only to the manner in which that authority has been exercised.

2. The objections summarized under paragraph (d) above, to the effect that "the warrant of attorney does not authorize the entry of judgment in favor of the lessor's assigns" and therefore the present appellee cannot enforce the warrant of attorney contained in the original lease, raise the question of the effect of the merger and consolidation of two or more corporations under the Act of May 3, 1909, P. L. 408, as amended by the Act of April 29, 1915, P. L. 205, upon the rights of action and property of each of the merged corporations. We agree with the court below that the present appellee is not in the position of an ordinary assignee of a lease as, for instance, was the plaintiff in the case of Curry v. Bacharach Quality Shops, Inc., supra. Even if it can be said in any proper sense of the word that the rights of action and property of the constituent corporations are assigned to the consolidated company resulting from the merger, such an assignment would be by operation of law. A more accurate description of the transfer would be to say that the consolidated corporation succeeds to the rights of action and property of the constituent companies. The language of the act is that "all the estate and property, real and personal, and rights of action of each of said

corporations, shall be deemed and taken to be transferred to and vested in the said new corporation, without any further act or deed." This distinction between assignment and succession was recognized in Mansfield, C. & L. M. R. R. Co. v. Drinker, 30 Mich. 124, 127. The consolidated corporation in that case was attempting to recover assessments upon subscriptions to the capital stock of one of the merged corporations. It had not complied with all the provisions of the merger act. The court held that the plaintiff must show that it had succeeded to the rights of the merged corporation by fully complying with the statute, or that it had acquired those rights by assignment. Under the circumstances of this case we think the present appellee is to be regarded as the legal successor of the original lessor and is entitled to enforce against appellant the provisions of the lease here involved. We are unanimously of opinion that the court below committed no error in discharging the rule.

The assignment of error is overruled and the order of the court below refusing to strike off the judgment is affirmed.