## DOWNER v. UNITED STATES FIDELITY & GUARANTY CO. OF MARYLAND.

### No. 4057.

Circuit Court of Appeals, Third Circuit.

Jan. 26, 1931.

Edward O. Tabor and McCahill & Tabor, all of Pittsburgh, Pa., for appellant.

Harold E. McCamey and Dickie, Kier & McCamey, all of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from a judgment of the United States District Court entered upon a compulsory nonsuit.

The plaintiff, a citizen of Pennsylvania, brought suit in assumpsit against the United States Fidelity & Guaranty Company of Maryland, surety on the official bond of Dallas H. Auvill, sheriff of Barbour county, W.

Va., to recover damages for false arrest and imprisonment. The following statute of West Virginia provides that: "Upon any such bond * * * suits may be prosecuted from time to time in the name of this State * * * for the benefit of * * * the person injured by a breach of the condition of any such bond."

The trial judge held that, before the plaintiff could recover from the surety on the bond, it was necessary for him either to sue the sheriff alone and procure a judgment against him which would fix his liability or to sue the sheriff and surety jointly. Because the plaintiff did not do either but sued the surety alone, the judge directed a nonsuit against him.

The bond on which suit was brought was conditioned for the faithful discharge by the sheriff of the duties of his office and bound the surety and the sheriff both jointly and severally. The pertinent part of it reads as follows:

"Know all Men by These Presents:

"That we, Dallas H. Auvill of Philippi, West Virginia, as Principal, and the United States Fidelity and Guarantee Company, a corporation duly incorporated under the laws of the State of Maryland as Surety, are held and firmly bound unto State of West Virginia in the sum of Twenty Thousand Dollars ($20,000,) lawful money of the United States of America, for the payment of which, well and truly, to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents."

On the merits, the trial judge found that: "The Deputy Sheriff of Barbour County, without warrant and without authority of law, arrested the plaintiff in the State of Pennsylvania, took him to the Sheriff's office in Barbour County, and at the direction of the Sheriff, placed him in jail where he was kept unlawfully for a period of two months."

Consequently there is no question as to the merits of the case, the sole question being as to procedure.

The Supreme Court of Pennsylvania held in a recent opinion by the Chief Justice in the case of Mintz v. Tri-County Gas Co., 259 Pa. 477, 482, 103 A. 285, that in suits at common law there are three distinct forms of obligations ex contractu: (1) Joint; (2) several; and (3) joint and several. In actions on the first, it is necessary to sue all the obligors together or the survivors of them; in the second, the obligors must be sued sepa-

rately; but, in the third, they may be sued either separately or jointly. Except where changed by statute, these principles are still applicable. Clement v. Commonwealth, 95 Pa. 107; 9 Cyc. 651; 30 Cyc. 12.

There is no statute in West Virginia or Pennsylvania requiring the principal to be sued and judgment obtained before suit may be brought against the surety. The plaintiff may rely upon the express provisions of the bond in which the surety for a consideration agreed, not only that the principal would perform the duties imposed upon him by law, but would not by virtue or under color of his office commit an illegal and improper act, but, if he did, it might be sued for damages separately without joining the sheriff, or jointly with him. The obligation imposed by the bond and the liability resulting from a violation of its terms are primary and absolute. It is no answer or defense that the plaintiff has not chosen to pursue the principal first, if he is following a remedy given by the bond. Murfree on Official Bonds says in § 683: "It is not generally necessary, in order to obtain judgment upon an official bond against the sureties, that a judgment against the principal be produced in evidence, or that he be a party to the suit against the sureties. Their liability is direct and not collateral, their bond is joint and several and all that is necessary to obtain a judgment against them is to show a breach by the principal of the condition of the bond, for their undertaking is that such a breach should not occur, and it is immaterial whether the principal is before the Court or not."

That a plaintiff may sue separately a surety, which has bound itself jointly and severally for the faithful performance of the duties of his office by the principal, without first obtaining judgment against the principal, is supported by authority. Grieb v. Northrup, 66 App. Div. 86, 72 N. Y. S. 481; State v. Leeds, 31 N. J. Law, 185; State v. Meyers, 14 Ohio, 538; Snyder v. Commonwealth, 1 Pen. & W. (Pa.) 94; Smith v. Commonwealth, 59 Pa. 320; Ferrell v. Grigsby (Tenn. Ch. App.) 51 S. W. 114; Bartlett v. Hunt, 17 Wis. 214.

The rule is stated in 32 Cyc. 91 (e) as follows: "Ordinarily, in the absence of a statute, the creditor or obligee cannot be required to resort to the principal before proceeding against the surety, as where both principal and surety are equally bound, and the creditor cannot be compelled in such cases to resort to other remedies before coming on

the surety. * * * The surety's remedy is to pay the debt and pursue the principal for reimbursement. * * * It follows that, in the absence of a statute, forbearance to proceed against the principal will not affect the right of the creditor to pursue the surety, whatever may be the consequences of the delay, such as the subsequent insolvency of the principal or the fact that the remedy against the principal may be lost by lapse of time."

The rule is similarly stated in 46 Corpus Juris, 1076, §§ 421 and 427: "Unless required by statute, plaintiff, in order to bring an action on an official bond, need not first obtain a judgment on the default complained of, since the obligation of a surety on an official bond is primary and not secondary. * * * Where the bond is in form joint and several, an action will lie against the surety alone without joining the officer, and under a statute permitting an action to be brought, against all or any of the persons severally liable upon the same obligation, the action may be brought against any one or more of the obligors without joining all."

In official bonds whether suit must first be brought and a judgment obtained against the principal depends upon the terms of the bond. When, by the terms of the instrument, the obligation of the surety or guarantor is the same as that of the principal, then, as soon as the principal is in default, the surety or guarantor is likewise in default and may be sued immediately and before any proceedings are had against the principal. This results from the fact that the surety had the right to contract such a liability, and, having done so, he is bound by his engagement. 1 Brandt on Suretyship, § 110.

In the early Roman Jurisprudence the right of the surety to compel the plaintiff to resort first to the principal to collect his demand seems to have been well established, but there was a gradual departure from this rule. Justinian, however, restored it, and from his time the doctrine was universally recognized throughout the Roman Empire and was followed in the jurisprudence of some of the nations of Europe, but it never secured a footing in England. The contrary doctrine has prevailed there from the earliest times. The common-law rule is that the plaintiff may sue the surety without first suing the principal, and the surety must pay and seek reimbursement from the principal. II Williston on Contracts, § 1276. This principle is true whether the damages be liquidated or unliquidated. Janes v. Scott et al., 59 Pa. 178, 98 Am. Dec. 328.

This rule of law is not only supported by authority, but is sound in reason, for a judgment against the principal could not be used for any purpose against his sureties. Not being parties to the suit, they could neither defend it nor take it up for review, and it could not be used to fix liability upon them. To bind the surety in any way by the judgment against the principal would amount to depriving the surety of its day in court. Douglass v. Howland, 24 Wend. (N. Y.) 35; McKellar v. Bowell, 11 N. C. (4 Hawks) 34; State v. Leeds, supra. It would be oppressive, costly, and unnecessary to require the plaintiff to prove in a suit against the principal alone his breach of duty and then to retry the same question against the surety alone or against the surety and his principal. There are cases, some of which were cited and relied on by the learned trial judge, holding that a judgment against the principal is a prerequisite to a proceeding against the surety, but these are founded on statutes regulating the procedure to be followed in such cases and the existence of such statutes implies the nonexistence of such prerequisite at common law. The learned trial judge said: "If the bond is to be taken literally, then the plaintiff has a right to proceed against the Surety in the first instance, the bond being joint and several, and it appearing that the Sheriff had failed to faithfully discharge the duties of his office in directing the imprisonment of the plaintiff. If the case is to be governed by the rule laid down in the cases where the surety obligates itself, in event that the principal fails to perform a contract, then this action would lie."

We think both on reason and authority the case is to be so governed, and that the judgment must be reversed and a new trial granted.