**CBS, INC.**

v.

**FILM CORPORATION OF AMERICA.**

**Civ. A. No. 80–1698.**

United States District Court,
E. D. Pennsylvania.

Aug. 30, 1982.

Douglas E. Ress, Morgan, Lewis & Bockius, Philadelphia, Pa., for plaintiff.

Steven E. Angstreich, Krimsky, Luterman, Stein, & Levy, P.C., Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

In this action, over which this Court has jurisdiction on the basis of diverse citizenship of the parties, 28 U.S.C. § 1332(b), plaintiff CBS, Inc. ("CBS"), as the surviving corporation of a merger with Fawcett Publications, Inc. ("Fawcett"), seeks to enforce against defendant Film Corporation of America ("FCA") a guaranty agreement between FCA and Fawcett for the debts of American Consumer, Inc. ("American Consumer") and/or Lipenwald Advertising ("Lipenwald"). Plaintiff has moved for summary judgment, contending that the facts are undisputed, that the law of New York applies to this action, and that under New York law, CBS as the successor corporation of a merger between CBS and Fawcett, may enforce the guaranty against FCA. FCA agrees that there exists no dispute as to any material fact, (Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, at 2), but contends in its cross-motion for summary judgment that Pennsylvania law and, if not Pennsylvania, Connecticut law, applies and that the laws of Pennsylvania and Connecticut do not permit the survivor of a corporate merger to enforce a contract of guaranty which guaranteed the obligations of the corporation which merged into the survivor corporation. For the reasons hereinafter set forth, the Court will enter an order granting plaintiff's motion and enter summary judgment in favor of the plaintiff and against the defendant.

*Facts*

American Consumer and Lipenwald are advertising companies. Lipenwald is a wholly owned subsidiary of American Consumer. FCA owns 48 percent of American Consumer. American Consumer, as part of its services for clients, placed advertisements in various media, frequently using Lipenwald as a conduit for placing such advertisements. In the course of this business, American Consumer and Lipenwald contracted with Fawcett to purchase advertising in various publications of Fawcett. During 1976, Fawcett became concerned about the ability of American Consumer and Lipenwald to pay bills accumulating with Fawcett. On January 17, 1977, FCA guaranteed in writing "all indebtedness which American Consumer and/or Lipenwald Advertising have incurred or may incur and performance of all obligations of said firm." The one-page unconditional guaranty, given in consideration of Fawcett's willingness to enter into further contractual relations with the advertising companies, is presented in Appendix A of this Memorandum. FCA does not dispute the authenticity and accuracy of the guaranty, nor does it assert that the guaranty was in any way conditional.

At the time the guaranty was executed, Fawcett was a wholly owned subsidiary of CBS. On February 14, 1977, approximately one month after the guaranty was executed, Fawcett merged into CBS. Ameri-

can Consumer and Lipenwald continued to place advertisements in Fawcett publications such as *Women's Day* and *Mechanix Illustrated* until May, 1979. Between June, 1978 and May, 1979, American Consumer and Lipenwald incurred debts to Fawcett of which $153,531.17 remains unpaid. The parties agree as to both the default of principal debtors, American Consumer and Lipenwald, and the amount unpaid to Fawcett.

*Choice of Law*

■ In order to adjudicate the legal rights of the parties, this Court must determine which substantive law of guaranty contracts governs the transactions of the parties. A federal court sitting in diversity will apply the choice of law principles of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Melville v. American Home Assurance Co.,* 584 F.2d 1306, 1308 (3d Cir. 1978). In contract actions, Pennsylvania courts employ the "most significant relationship" test of the Restatement (Second) of Conflict of Laws coupled with governmental "interest analysis" to reach a quantitative and qualitative conclusion as to the location of the center of gravity of the matters at issue. *Melville v. American Home Assurance Co.,* 584 F.2d at 1311; *Schoenkopf v. Brown & Williamson Tobacco Corp.,* 483 F.Supp. 1185, 1194–95 (E.D. Pa. 1980) *aff'd,* 637 F.2d 205 (3d Cir. 1980); *Culbreth v. Simone,* 511 F.Supp. 906, 913 (E.D. Pa. 1981); *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964); *Gillan v. Gillan,* 236 Pa.Super. 147, 345 A.2d 742 (1975).

■ "Interest analysis" involves a qualitative appraisal of the relevant states' policies with respect to the controversy before the court so that the court may determine the state which has the most significant interest in the dispute. *Melville, supra,* 584 F.2d at 1311. The Restatement (Second) examines the totality of the contact which each state has with various portions of the controversy, counting and weighing those contacts in order to determine which state possesses the "most signif-

icant relationship" with the dispute. *Melville, supra,* 584 F.2d at 1311.

Section 6 of the Restatement directs a court to consider, when weighing contacts with a given forum, (a) the needs of the interstate and international systems; (b) the relevant policies of the state forums; (c) the relevant policies of other interested states and their relative interests in the determination of the controversy; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied.

Section 188 of the Restatement, pertaining to contracts in which the parties have not specified the governing law, states:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties, the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided...."

Section 194 of the Restatement, pertaining to contracts of suretyship, states:

The validity of a contract of suretyship and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the law governing the principal obligation which the contract of suretyship was intended to secure, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Comment a. of Section 194 states that contracts of guaranty are to be included within the term "suretyship." Thus, a Pennsylvania court would in this case apply the principles of the Restatement to this agreement between FCA and Fawcett and would also examine the governmental interests involved in determining the law to be applied in interpreting the FCA guaranty. *See Griffith v. United Air Lines, supra;· Gillan v. Gillan, supra; Melville v. American Home Assurance Co., supra.* This Court has employed the Pennsylvania choice of law methodology and concluded that New York law should be applied.

Section 194 of the Restatement requires that the Court examine "the principal obligation which the contract [of guaranty] was intended to secure." FCA's guaranty of January 17, 1977 was intended to secure payment of a continuing series of advertising commitments made by American Consumer and Lipenwald to place advertisements in various publications of Fawcett. These advertisements were placed by Fawcett's New York division, which billed American Consumer and Lipenwald from New York. Without doubt, credit was extended in New York by Fawcett to American Consumer and Lipenwald. The record indicates that negotiations regarding the specific advertising commitments took place in New York or in Connecticut. At the time of the guaranty, American Consumer and Lipenwald were incorporated in Connecticut and had their principal places of business in Connecticut. Fawcett was a Delaware corporation and had its principal place of business in Connecticut. However, these factors do not outweigh the substantial negotiation, contracting, and performance contacts with New York.

The Reporter's Note to Section 194 of the Restatement observes that, in the majority of cases, courts have held that the law governing the suretyship contract is the local law of the state where the creditor acted upon the guaranty by extending credit. *Restatement (Second) of Conflict of Laws*, § 194 Reporter's Note, at 619 (1971). The draftsmen of the Restatement preferred the more flexible standard of § 194 to the more traditional "locus of credit extension" rule. Nevertheless, it is clear that under either the traditional approach or that of the Restatement, the state with the most significant relationship to the underlying obligation guaranteed by FCA is New York.

■■ Were this Court to construe the guaranty as a contract completely separate from the underlying obligation that it secured, New York would still possess the most significant relationship to the matter at issue. Section 187 of the Restatement lists five contacts to consider: the place of contracting; the place of negotiation; the place of performance; the location of the subject matter of the contract; and the location of the parties. Comment e states that "the place of contracting is the place where occurred the last act necessary, under the forum's rules of offer and acceptance, to give the contract binding effect, . . . ." *"Restatement (Second) of Conflict of Laws*, § 187 comment e (1971). Pennsylvania law provides that a guaranty becomes a binding contract when the guaranty is accepted by the party guaranteed by the agreement when notice of acceptance of the guaranty is given to or acquired by the guarantor. *Evans v. McCormick,* 167 Pa. 247, 31 A. 563 (1895); *Coe v. Buehler,* 110 Pa. 366, 5 A. 20 (1885). The record shows that FCA drafted, signed, and sent its written guaranty from Pennsylvania to Fawcett's corporate headquarters in Connecticut, where Fawcett accepted the guaranty and notified FCA, who received the notification in Pennsylvania. When acceptance

is made and notice given, the place of contracting is the origin of the acceptor guarantee's communication. *See Watson v. Lehigh Valley Wood Work Corp.,* 198 F.Supp. 273, 275–76 (E.D. Pa. 1961). The place of contracting, then, is Connecticut. Other contracts, however, point to New York. As heretofore noted, the contract was negotiated in part in all three states but was performed in New York, the state in which the advertisements were placed, where credit was extended, and where Fawcett billed American Consumer and Lipenwald. The subject matter of the contract, advertising placements, was located in New York. As heretofore noted, American Consumer and Lipenwald are Connecticut corporations; Fawcett was incorporated in Delaware and had its principal place of business in Connecticut; CBS has its principal place of business in New York and was incorporated in Delaware; FCA is a Pennsylvania corporation. Evaluating the contracts according to "their relative importance with respect to the particular issue before the Court," the inescapable conclusion is that New York possesses the most significant relationship with both the underlying obligation and the guaranty itself. "If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied...." *Restatement (Second) of Conflict of Laws,* § 187(3) (1971). When there is a conflict between the state that is the place of contracting and the state which is the place of performance, the latter state will usually be considered the state with the more significant relationship. *See Frankel v. Johns-Manville Corp.,* 257 F.2d 508 (3d Cir. 1958); *Bohrer-Reagan Corp. v. Modine Manufacturing Co.,* 433 F.Supp. 578 (E.D. Pa. 1977). Without doubt, both the guaranty and the contracts creating the underlying obligation were performed in New York.

■ Applying New York law to the guaranty comports with the general choice of law principles expressed in Section 6 of the Restatement, in that this determination protects the justified expectations of the parties, the relevant policies of Pennsylvania, the forum state, and satisfies the need for coordination of the interstate and international systems. Applying New York law is consistent with the basic policies underlying the field of choice of law and therefore enhances certainty, predictability, and uniformity of result. New York law is as easily determined and applied to this case as is Connecticut or Pennsylvania law.

Both the "interest analysis" component of Pennsylvania choice of law principles (*See Griffith v. United Airlines, supra; Melville v. American Home Assurance, supra*) and Section 6(2)(c) of the Restatement require that this Court examine the relevant policies and relative interests of the states concerning the determination of the issue before the Court. New York certainly has an interest in seeing that agreements are kept with companies doing business in New York and extending credit in New York to companies located in other states. New York, as the center of gravity of the negotiation, performance, and subject matter of both the guaranty and the contracts of underlying obligation, has an interest in seeing the dispute of the parties fairly resolved. Connecticut and Pennsylvania, domiciliary states for some of the parties, have less significant governmental interests in the construction and enforcement of the guaranty. Therefore, the "interests analysis," as well as the Restatement (Second) Analysis, shows New York to have the most significant relationship to this matter and to be the state whose law should be applied to this diversity case.

*Enforcement of the Guaranty by the Survivor Corporation of a Merger*

■ New York law has long held that the rights of a company pursuant to a guaranty agreement survive the merger of that company with another, even though the originally guaranteed company is not the survivor corporation of the merger. *Bank of United States v. Glickman,* 241 App.Div. 92, 94–95, 271 N.Y.S. 90, 93 (*aff'd,* 265 N.Y. 539, 193 N.E. 309 (1934); *W.H. McElwain Co. v. Primavera,* 180 App.Div. 288, 167 N.Y.S. 815 (1917). Furthermore, the New York merger statute states that when a

merger has been affected, the surviving corporation shall thereafter possess "all the rights, privileges, immunities, powers and purposes of each of the constituent corporations." N.Y. Bus. Corp. Law § 906(b) (McKinney 1963). Defendant, in its Memorandum of Law concerning summary judgment at p. 9, concedes that CBS has standing to enforce the guaranty under New York law. Thus, under the law applicable in this case, CBS may enforce the obligations of FCA owed to Fawcett. The parties do not contest that American Consumer and Lipenwald owe Fawcett $153,531.17 and that FCA unconditionally guaranteed that debt in writing.

Neither party argues that the law of Delaware applies to this case. However, the merger between Fawcett and CBS was effected under Delaware law, whose merger statute, like New York's, provides that a survivor corporation shall possess "all the rights, privileges, powers and franchises" of the component companies. Del. Code Ann. Tit. 8 §§ 253, 259 (1975).

As heretofore pointed out, the defendant contends that the law of Pennsylvania, and if not Pennsylvania, that of Connecticut, should apply to this case. Defendant contends that, under Pennsylvania law, the survivor of a corporate merger is not permitted to enforce a contract of guaranty which guaranteed the obligations of the corporation which merged into the survivor corporation. Defendant, in support of its contention, cites the case of *John Wanamaker v. Shoemaker,* 70 Pa.Super. 473 (1917). However, this case does not, in the Court's opinion, support the defendant's general proposition.

■ Pennsylvania's statute concerning mergers and the legal rights of surviving corporations provides that the surviving corporation of a merger "shall possess all the rights, privileges, and franchises theretofore vested in each of the constituent corporations..." Pa. Stat. Ann. Tit. 15, § 803 (Purdon 1967). In Pennsylvania, a corporation formed by the merger of other corporations succeeds to all rights of action possessed by the companies merged into the

survivor corporation. *Pittsburgh Terminal Coal Corporation v. Potts,* 92 Pa.Super. 1 (1927); *Pittsburgh Terminal Coal Corp. v. McClements,* 92 Pa.Super. 29 (1927); *Bankers Allied Mutual Ins. Co. v. Lincoln Plan Corp.,* 42 Pa. D & C 2d 241 (1966). *See also Mitchell v. Liberty Clay Products Co.,* 291 Pa. 282, 139 A. 853 (1927); *Columbia & Montour Electric Co. v. North Branch Transit Co.,* 258 Pa. 447, 102 A. 214 (1917) (survivor corporation inherits the financial and legal liabilities of merged companies as well as their legal rights).

■ This Court's reading of Connecticut law on this issue shows that the law of Connecticut is the same as that of New York and Pennsylvania in this regard. Connecticut's merger statute provides:

The surviving or new corporation (of a merger) shall thereupon ... possess all the rights, privileges, immunities and franchises, as well of a public as of a private nature, of each of the merging or consolidated corporations.

Conn. Gen. Stat. Ann. §§ 33–369 (pocket part 1980). Connecticut's statute did not change its common law regarding mergers and the rights of surviving legal entities. *See Fruit Industries, Ltd. v. Cohen,* 3 Conn. Supp. 28, 29 (1935) ("where a continuing guaranty is given to one company and that (company) merges into another company, the guaranty inures to the benefit of the consolidated company").

Regardless of the law applied to this case, it is beyond dispute that CBS may enforce a guaranty made to Fawcett.

*Parties Necessary to this Action*

■ The original debtors, American Consumer and Lipenwald, need not be parties to this action in order for CBS to enforce the FCA guaranty to Fawcett. Rule 19(a) of the Federal Rules of Civil Procedure provides in relevant part:

A person ... shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of

the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of ·his claimed interest. The necessary parties requirement of Rule 19 seeks to avoid unnecessary, multiple litigation, to provide complete relief to the parties before the court, and to protect the rights and interests of absent parties. *See Freeman v. Marine Midland Bank,* 419 F.Supp. 440, 451 (E.D.N.Y. 1976); *Republic Realty Mortgage Corp. v. Eagson Corp.,* 68 F.R.D. 218 (E.D. Pa. 1975). In diversity actions, federal courts look to the status of the parties under state law in order to determine which parties must be joined if the action is to proceed. *Wolgin v. Atlas United Financial Corp.,* 397 F.Supp. 1003 (E.D. Pa. 1975), *aff'd,* 530 F.2d 963, 966 (3d Cir. 1976).

Under New York law, a creditor may sue a guarantor without first suing the debtor. *See L.W.R.L. Co. v. Risman,* 48 Misc.2d 390, 265 N.Y.S.2d 17 (1965); *Court Press, Inc. v. Aronstein,* 139 Misc. 145, 249 N.Y.S. 70 (1931). The creditor need not take any steps to collect from the principal debtor before bringing an action against the guarantor. *Aquavella v. Harvey,* 69 Misc.2d 606, 608, 330 N.Y.S.2d 560, 563, *aff'd,* 40 App.Div.2d 940, 337 N.Y.S.2d 611 (1972). In the instant case, the record shows that CBS has attempted to collect the debt owed to it from both American Consumer and Lipenwald.

Connecticut and Pennsylvania law regarding necessary parties would produce the same result as would New York law. *See Wallace Barnes Co. v. Zachs,* 117 Conn. 285, 167 A. 726 (1933); *Tyler v. Waddingham,* 58 Conn. 375, 20 A. 335 (1890); *Downer v. United States Fidelity & Guaranty Co. of Maryland,* 46 F.2d 733 (3d Cir. 1931); *Finance America Credit Corp. v. Kruse Classic Auction Co.,* 428 F.Supp. 135 (E.D. Pa. 1977) (principal is not an indispensable party in suit against surety/guarantor and surety/guarantor may be sued without first

bringing suit or making demand against principal). *See also Miners' State Bank v. Auksztokalnis,* 283 Pa. 18, 128 A. 726 (1925); 17 *Penn. Law. En. Guaranty,* § 10 at 174 (action against principal is not condition precedent to action on an absolute guaranty of payment). The parties in this case agree that the FCA guaranty to Fawcett was unconditional and not in any way contingent upon demand or pursuit of legal remedies against the principal debtors.

*The Extent of FCA's Guaranty Obligation*

Though defendant, in its memorandum of law concerning summary judgment (at p. 2) stated "there are no genuine issues of material fact" in this case, defendant also made statements in that Memorandum which may be interpreted as suggesting that defendant disputes the size of the American Consumer/Lipenwald debts that it agreed to guarantee. FCA states that "Defendant agreed to provide the guaranty based upon an understanding that its exposure to Fawcett would not exceed $50,000." Memorandum at 1. Defendant cited as support for this factual assertion "(Ex. B, pp. 17, 21–22)" of its Memorandum. No such exhibit was appended to defendant's memorandum. Three pages later, defendant stated that there was no dispute between the parties as to any material fact. CBS has submitted the written guaranty of FCA. This guaranty, a complete and fully integrated writing within the meaning of the parole evidence rule, does not limit FCA's liability as guarantor or recite any representations concerning the maximum amount of the American Consumer/Lipenwald debt to be guaranteed by FCA. On April 29, 1982, counsel for plaintiff CBS wrote to this Court concerning the summary judgment motion and stated "Both parties agree that there exists no issue as to any material fact and that the case is ripe for decision on the motion and Cross-Motion for Summary Judgment and supporting papers." According to the letter, a copy was sent to defendant FCA's counsel. FCA's counsel has not disputed the representation contained in the letter.

Furthermore, FCA, as 48 percent owner of American Consumer, which totally

owned Lipenwald, would likely have known the amounts of debt incurred by American Consumer and Lipenwald. If FCA seriously wished to raise as a defense an alleged agreement limiting the amount of the guaranty, despite the absence in the guaranty of any mention of such an agreement, FCA was obligated to do more than merely assert that its liability was limited to $50,000. A party opposing summary judgment must do more than merely raise factual assertions unsupported by affidavits or other evidence in order to create a dispute as to a material fact. Furthermore, FCA has acted upon its representation that there is no factual dispute in this case by making its own motion for summary judgment in its favor. Under these circumstances, the Court need look no further than the written guaranty in order to determine the extent of FCA's liability for the debts of American Consumer and Lipenwald.

*Conclusion*

The parties agree that American Consumer and Lipenwald owe Fawcett the sum of $153,531.17 and that FCA guaranteed these debts. CBS, as the surviving corporation of a merger with Fawcett, may enforce the guaranty in its favor under New York, Connecticut, or Pennsylvania law and need not, under the law of any of these jurisdictions, join American Consumer or Lipenwald as a party to this law suit or first sue these principal debtors. However, an analysis of Pennsylvania choice of law methodology indicates that New York law should be applied in this case. For these reasons, the motion for summary judgment of plaintiff CBS will be granted, defendant FCA's cross-motion for summary judgment will be denied, and judgment will be entered in favor of plaintiff CBS and against defendant FCA.