# The Columbia & Montour Electric Company *v*. The North Branch Transit Company.

*Corporations—Mortgages—Railways—Merger — Rights of bond-holders of constituent companies—Receivership—Equity—Estoppel—Contracts—Constitutional law—Acts of May 29, 1901, P. L. 349, and May 3, 1909, P. L. 408.*

1. No estoppel can be claimed unless the party claiming it has been in ignorance of the true state of facts.

2. The receiver of a consolidated street railway company cannot sell the same divested of the lien of an underlying mortgage upon a constituent branch thereof.   The terms of such mortgage, including the means therein provided for its collection, constitute a contract the obligation of which is protected by the federal and State Constitutions, which cannot be impaired by legislative enactment or by judicial decision; the clear legal right to foreclose such mortgage cannot be denied because of loss which might thereby result to the bondholders of other constituent branches of such merged railway, or the general creditors, or because of inconvenience to the public.

3. The Acts of May 3, 1909, P. L. 408, Section 3, and of May 29, 1901, P. L. 349, Section 3, by operation of law preserve liens against constituent corporations after their merger.

4. The fact that in every case of merger of railways, where the different branches come under one management, there naturally results more or less intermingling of property and changes in the means of operation does not destroy the existing liens on the constituent branches.

5. The C. & M. Electric Railway Company and the D. & B. Street Railway Company were consolidated.   Each company had previously issued bonds secured by mortgages.   The D. & B. Street

Railway Company had defaulted on its bonds and the bondholders of the C. & M. Electric Railway Company insisted as a condition precedent to such merger that the bonded indebtedness of the D. & B. Street Railway Company should be reduced in amount and that the rate of interest thereon should be reduced; such conditions were agreed to by all the bondholders of the D. & B. Company. The merged company subsequently passed into the hands of a receiver and the trustee under the mortgage issued by the C. & M. Electric Railway Company petitioned the court' for leave to foreclose its mortgage. The receiver and the bondholders of the D. & B. Company alleged that the bondholders of the C. & M. Company were estopped to foreclose their mortgage by having induced the bondholders of the D. & B. Company to reduce the amount of their bonds, and by having consented to the merger. The lower court dismissed the petition. *Held,* the bondholders of the C. & M. Company were not estopped from foreclosing their mortgage and the bondholders of the D. & B. Company could not claim such estoppel, not having acted in ignorance of the true state of facts, and the decree was reversed.

Philadelphia Trust Co. v. Northumberland County Traction Company et al; Penna. Steel Co. v. Sunbury & Susquehanna Ry. Co., 258 Pa. 152, followed.

Argued April 9, 1917. Appeal, No. 207, Jan. T., 1916, by Commonwealth Trust Company, Trustee, from decree of C. P. Columbia Co., Dec. T., 1915, No. 1, in equity, dismissing petition for leave to foreclose a corporate mortgage in case of The Columbia and Montour Electric Company v. The North Branch Transit Company. Before BROWN, C. J., MESTREZAT, POTTER, FRAZER and WALLING, JJ. Reversed.

Bill in equity for an injunction and for the appointment of a receiver.

Petition by the Commonwealth Trust Company, Trustee, for leave to foreclose the mortgage on a branch of defendant formerly owned by The Columbia and Montour Electric Railway Company. Before EVANS, P. J.

The opinion of the Supreme Court states the facts.

The court dismissed the petition. The Commonwealth Trust Company, Trustee, appealed.

*Error assigned* was the decree of the court.

*C. H. Bergner,* with him *W. S. Snyder,* for appellant.

*Fred Ikeler,* with him *Roscoe R. Koch,* for appellees.

OPINION BY MR. JUSTICE WALLING, June 30, 1917:

In 1901 the Columbia and Montour Electric Railway Company, a duly chartered street railway company, built and equipped a line of electric street railway in Columbia County, extending from Berwick Borough through Bloomsburg to Catawissa, and being about seventeen miles in length. The same year it issued bonds to the amount of three hundred and seventy-five thousand dollars; and as security therefor gave to the Commonwealth Trust Company, appellant, as trustee, a first mortgage upon its property, franchises, etc.

In 1907 another company, the Danville and Bloomsburg Street Railway Company, herein called the Danville Company, completed and began the operation of an electric street railway extending from Danville to Bloomsburg, and being about eight miles in length. Prior to its completion, the company gave a first mortgage to the Easton Trust Company, in the sum of two hundred and fifty thousand dollars, in trust to secure an issue of bonds of like amount, of which two hundred twenty-five thousand dollars were issued. In each case the purchasers of the bonds received a stock bonus equal to fifty per cent. of the par value of the bonds.

The track of the latter company terminated outside of the town of Bloomsburg, and by agreement its cars entered the town on the track of the other company.

A Delaware corporation was chartered in November, 1908, under the name of the Columbia Power, Light and Railways Company. The principal purpose of its incorporators was to create a holding company, which should purchase and hold the stock of said street railway companies, and also the stock and bonds of a number of elec-

tric light and power companies in the same locality, with the ultimate purpose of causing an actual physical merger and consolidation of the two railway companies into one company. This ultimate plan and purpose was fully made known to, acquiesced in and understood by the bondholders of both railway companies, and early in the year 1909 practically all the stock of said railway companies was transferred to the holding company in exchange for its stocks and bonds. Thereafter the merger of the two railways was duly consummated under the name of the Columbia and Montour Electric Railway Company, later changed to the North Branch Transit Company.

Prior to the consolidation the Danville Company had proved unprofitable, and, as a condition precedent to such exchange of stock and merger, the bondholders of the Columbia and Montour Electric Railway Company insisted that the outstanding bonded indebtedness of the Danville Company should be reduced to $157,500, and that the interest thereon be reduced from five to four per cent. per annum, both of which conditions were agreed to by all the bondholders of the Danville Company, whose bonds were accordingly reduced pro rata. The final agreement of merger to which the bondholders consented was consummated February 7, 1911, and it has since been managed and operated as one railway. So far as appears whatever stock was held by the bondholders was voted in favor of the merger; and the Commonwealth Trust Company had full knowledge of the facts in connection therewith.

The court below finds, inter alia: "By virtue of this merger, the physical property of the two corporations has become intermingled and united; many material changes and alterations have been made; the power plant of the Danville and Bloomsburg Street Railway Company has been dismantled; its boilers, engines, switchboards, dynamos and electric generators have been removed; and the repair and machine shops formerly of this company

have also been removed and installed on the Columbia and Montour division; the trolley wire by which the Danville & Bloomsburg Company formerly operated its cars into the town of Bloomsburg has been removed; the trucks, motors and cars of the two companies have been intermingled, and generally the property of the old component companies has been so changed, altered and intermingled that it cannot now be separated without injustice and hardship being done. The bondholders under the Columbia and Montour mortgage have at all times known of this intermingling of property and most of the important changes and alterations have actually been approved by the members of the bondholders' committee who now seek, through their trustee, the petitioner, to foreclose their mortgage, and at no time has there been any objection or protest. That portion of the property covered by the Columbia and Montour mortgage has been largely improved and benefited by the merger of the two roads and the bonds secured by this mortgage have been greatly enhanced in value, all of which benefits and advantages have been accepted and received by said bondholders. As a result of this merger, consolidation, and general intermingling of property, it would now be practically impossible to restore either of these two divisions of the transit company to the situation in which it was prior thereto. If a separate sale were now to be made of that portion of the road covered by the lien of the Columbia and Montour mortgage, the remaining portion of the property would be left in such a shape as to render its operation practically impossible." However, it could be put in a condition for operation by the expenditure of a considerable sum of money.

On Sept. 27, 1915, the Court of Common Pleas of Columbia County, sitting in equity, appointed A. W. Duy, Esq., of Bloomsburg, receiver of the North Branch Transit Company, because of its financial embarrassment. In the decree making such appointment it is ordered, inter alia, as follows, viz: "And the defendant

company, the North Branch Transit Company, its officers, agents and employees and the creditors and stockholders of said company their agents or attorneys, are hereby enjoined and restrained from retaining or taking possession thereof, assigning or transferring any of the assets or property, real or personal, of said defendant company, or in anywise collecting, receiving or dealing in the same; or in molesting or interfering with the full and absolute possession and control thereof by the said receiver."

On November 1, 1915, the Commonwealth Trust Company, as such trustee, presented its petition to the court below setting out, inter alia, that default had been made since January 1, 1914, in payment of interest on the mortgage bonds after demand; also the request of bondholders that it proceed to foreclose the mortgage, which by its terms had become due and payable; and further praying that the order appointing the receiver be so modified as to permit such foreclosure. The receiver and later the bondholders of the Danville Company filed answers, to which petitioner demurred.

The court below found the facts from the pleadings, and we have done the same so far as seem here important. The court dismissed the petition, mainly on the ground that such bondholders by reason of the facts above stated were estopped from proceeding to foreclose the mortgage upon the rights and property of the original Columbia and Montour Electric Railway Company, and that to do so would be inequitable. From which decree petitioner took this appeal.

In our opinion the facts do not justify the conclusion of the court below. The merger was the act of the directors ratified by the stockholders of the constituent companies, over which the bondholders as such had no control; and it was effected by statutory authority, which expressly preserves liens against the constituent corporations; for in Section 3 of the Act of May 3, 1909, P. L. 408, it is provided, "That all rights of creditors and all liens upon the property of each of said corporations shall

continue unimpaired, and the respective constituent corporations may be deemed to be in existence to preserve the same; and all debts, duties and liabilities of each of said constituent corporations shall thenceforth attach to the said new corporation, and may be enforced against it to the same extent and by the same process as if said debts, duties and liabilities had been contracted by it." And a like provision is found in the Act of May 29, 1901, P. L. 349 (Sec. 3). So that the lien of the first mortgage upon each railway remained thereon by operation of law, in addition to any rights given creditors against the merged company. There is nothing in the record to indicate that any party to the transaction, whether as stockholder, bondholder or otherwise, had a different understanding of the matter. The law does not provide for the merger of the liens against constituent corporations and there was no attempt to do so in this case; and aside from the agreement as to the amount of the bonds no bondholder was asked to or did waive any right secured to him by the mortgage contract, or by the statutes of the Commonwealth. As we understand the history of the case, the bonds of the Danville Company were defaulted obligations before the consolidation, and the fact that the holders of the bonds of the other corporation may have insisted on a reduction of the face amount and rate of interest of the former as a prerequisite to the merger agreement, indicates no intent on their part to relinquish the security of their own mortgage. The Danville Company voluntarily agreed to the merger, as its bondholders did to such reduction. It was a voluntary arrangement with full knowledge on both sides and without the suggestion of fraud or bad faith. We do not see how it can be held that the bondholders lost their rights under the mortgage by consenting to a merger based upon a statute which expressly preserves such rights. True, there was subsequently an intermingling of rolling stock and other property, and the power house on the Danville Branch was dismantled and its trolley wire leading into Bloomsburg

removed, and some improvements made on the other branch, but that was solely the work of those in charge of the merged company. The fact that a committee, representing the bondholders of the original Columbia and Montour Company, inspected the line and acquiesced in the work done does not estop such bondholders from proceeding on their mortgage. They waived nothing by failing to object to such changes and there is no suggestion of any collusion between such bondholders and the officers of the merged road. The bondholders of the Danville Company had equal means of knowledge as to the entire transaction, and hence a necessary element of estoppel is lacking: 16 Cyc. 738, 741.

No estoppel can be claimed unless the party claiming it acted in ignorance of the true state of facts: Hill v. Epley, 31 Pa. 331; Woods v. Wilson, 37 Pa. 379; Wright's Appeal, 99 Pa. 425.

Except as to the question of estoppel, of which there is no sufficient evidence, this case is ruled by that of Philadelphia Trust Company, Trustee, v. The Northumberland County Traction Company et al.; Pennsylvania Steel Company v. Sunbury & Susquehanna Ry. Co., 258 Pa. 152, decided at the present term, in which the opinion of this court by Mr. Justice MESTREZAT holds, inter alia, that the receiver of a consolidated street railway company cannot sell the same divested of the lien of an underlying mortgage upon a constituent branch thereof; that the terms of such mortgage, including the means therein provided for its collection, constitute a contract, the obligation of which is protected by federal and State constitutions, which, cannot be impaired by legislative enactment or by judicial decision; and that the clear legal right to foreclose such mortgage cannot be denied because of loss which might thereby result to the bondholders of other constituent branches of such merged railway, or to the general creditors, or because of inconvenience to the public. The principles there stated are fully supported by the reasons given and authorities cited, and we find no controlling difference between that

case and this. In every case of such merger, where the different branches come under one management, there naturally results more or less intermingling of property and changes in the means and methods of operation, but that does not destroy the existing liens on the constituent branches. All the circumstances, including the answer of the bondholders of the Danville Company to the receiver's petition for leave to issue certificates, indicate an understanding that each mortgage continued a separate lien upon its constituent road; and there is no allegation of any agreement not to foreclose the same. Appellant is insisting on its legal right, not seeking equitable relief.

The above statement quoted from the opinion of the court below, that the bonds of the Columbia and Montour Company have been greatly enhanced in value by the improvement of their branch of the line, can only be accepted upon the assumption that their lien and the right to enforce it still exist. As such lien cannot be divested by the receiver's sale, unless the mortgage can be foreclosed it is difficult to see how the bonds can ever be collected. There seems to be no authority in the receiver to sell such merged road divested of the first mortgage liens upon the constituent parts, and, if it might be done. by. agreement of all the parties in interest, there is no assurance that such agreement could ever be obtained. Of course success was anticipated at the time of the merger and the failure seems to bear hard upon the Danville branch and those interested therein; but, inasmuch as they seem to have acquiesced in all of which they now complain, they cannot prevent petitioner from foreclosing the mortgage upon the other branch, as it has the plain legal right to do. New running arrangements may be secured so that the result may not be as disastrous as anticipated. We cannot here determine the rights of the respective parties as to intermingled property.    •

The decree is reversed, the petition reinstated and record remitted that appellant may be granted the relief prayed for. The cost of the appeal to be paid by the receiver out of the estate.