WILLIAM J. MCGLINN,

*vs.*

WILSON LINE, INCORPORATED, a corporation organized and existing under the laws of the State of Delaware.

*New Castle, July* 30, 1934.

*Robert H. Richards,* of the firm of Richards, Layton & Finger, and *Lucien B. Carpenter,* of Philadelphia, Pa., for petitioner.

*James H. Hughes, Jr.,* of the firm of Ward & Gray, for receivers.

*Christopher L. Ward, Jr.,* and *Arthur G. Logan,* of the firm of Marvel, Morford, Ward & Logan, and *John R. Umsted,* of Philadelphia, Pa., for Stockholders' Protective Committee.

*Thomas Reath, Jr.,* of Philadelphia, Pa., for Bondholders' Protective Committee.

THE CHANCELLOR: Receivers in insolvency were appointed for the above named defendant on February 20,

1934, upon bill and consent answer filed on that day. They took possession of all of the defendant's assets except a small and relatively unimportant portion thereof located outside of the jurisdiction of this court.

The Pennsylvania Company for Insurances on Lives and Granting Annuities, as trustee under an indenture of mortgage executed by the insolvent defendant, filed its petition asking leave of the court to institute foreclosure proceedings on the mortgage and to make the receivers parties therein. The mortgage is dated March 1, 1929. It was given to secure an issue of $600,000 of six per cent. bonds. The property covered by the mortgage consists principally of seven steamboats together with their boilers, etc., real estate and 7505 shares of the seven per cent. preferred stock of Delaware-New Jersey Ferry Company.

The petitioner alleges and it is admitted by the receivers that the mortgage, as to the steamboats, is a preferred ship mortgage under the Act of Congress of the United States approved June 5, 1920, known and cited as the *Merchant Marine Act,* 1920 (*Section* 30, *Subsec.* D [46 *USCA,* §922]), and that, in respect of each of said steamboats, it has the preferred status given by the provisions of said act (*Section* 30, *Subsec. M* [46 *USCA,* §953]).

The maturity date of the bonds was fixed as March 1, 1934. The bonds were not paid upon maturity and remain unpaid. The interest however has been paid.

For the purpose of foreclosing, the petitioner desires to file in the District Court of the United States for the District of Delaware a libel in admiralty to foreclose the mortgage against the boats and to file in that court or such other courts as the petitioner may be advised to be proper, such other proceedings as it may deem appropriate to enable it to foreclose the mortgage against all the other property pledged thereunder, joining the receivers as parties.

The receivers oppose the granting of the leave prayed

for. They base their opposition upon the ground that a reasonable delay in the matter of foreclosure will not be prejudicial to the holders of the bonds, and denial of such delay will on the other hand be of great hardship to the general creditors and the stockholders of the corporation in that their equity in the property would probably be totally lost to them. The mortgaged assets appear to embrace about all that the mortgagor owns. The assets of the corporation are asserted by the receivers to be worth over $2,800,000, and the security of the bonds, after allowing for $168,000 of prior liens, is therefore averred to be in no danger of impairment by a reasonable delay. The net operating earnings of the company for the year ending March 1, 1934, are alleged to be in such condition, as shown by the receivers' reports, that interest on the prior mortgages and $31,000 of principal maturities thereof may be paid, and then enough left to cover the interest charge on the bonds secured by the mortgage sought to be foreclosed with a balance remaining of over $12,000. The current condition of earnings is shown by the receivers to be running over ten per cent. better than for the year ending March 1, 1934, while the increase in operating costs is shown to be running less than five per cent. higher.

The foregoing statement of net earnings is applicable to operations only. It does not therefore include the dividends derived from the company's 7505 shares of preferred stock of the Delaware-New Jersey Ferry Company, which amount to $52,535.00 annually if paid, an amount alone sufficient to cover the interest charge of the bonds outstanding under the mortgage with a surplus of $16,535.00. The semi-annual dividend already paid on the Ferry stock during the current year was applied to and paid on the interest due on the bonds; so that, while the principal is overdue, the interest is not. The dividends on the Ferry stock appear to be in no danger of default.

It is believed, say the receivers, that if foreclosure

is delayed for a few months, the equity in the assets can be saved for the general creditors and stockholders through a refinancing of the mortgage now sought to be foreclosed. In fact, they say, the refinancing had been about arranged for well in advance of the maturity date when the enactment of the so-called *Securities Act* (15 *USCA*, § 77a, *et seq.*) by the Congress frightened the underwriters off. Negotiations are now alleged to be under way which give promise of early success for the borrowing of funds in an amount sufficient to pay off the present bonds in full. What these negotiations are and with whom they are being conducted, does not appear. It is confidently asserted however that they will be successful.

Looking at that part of the mortgage which covers the steamers, the petition alleges and the receivers admit that procedure of foreclosure by libel proceedings in admiralty in the United States District Court is available to the petitioner under the *Merchant Marine Act*, 1920 (*Section* 30, *Subsec. K* [46 *USCA*, § 951]). The petitioner argues at some length through its solicitors that the consent of this court is not necessary to be had as a condition precedent to prosecution of those proceedings. If so, the question naturally propounds itself—why does the petitioner ask for it? I suppose the answer would be—because it is desired to secure the consent in order to obviate the possibility of raising any question in the federal court of its necessity. That being the situation, I shall proceed upon the assumption, whether a correct one or not, which the petitioner's request necessarily predicates—that is, that the case is one where it is proper for the court to say whether it should consent to proceedings in admiralty against its receivers and the consequent disturbance of them in their possession of the pledged assets.

On that assumption, the steamers are grouped in the same category with the other assets and the answer upon the point of consent is equally applicable to all.

The statute under which the receivers were appointed (*Revised Code* 1915, § 3883) is for the benefit of creditors and stockholders. It contemplates that the court will, on adjudication of insolvency, take possession of the corporate assets and administer them in the interest of all parties concerned. The receivers appointed by the court take charge of the corporation and manage its business and affairs under the orders of the court. The primary relief contemplated by the appointment of receivers is "to protect and preserve and ultimately dispose of the corporate assets in harmony with the conception that the statute has conferred upon the classes named (creditors and stockholders) a right to have the assets impressed with a beneficial interest common to all." *Mackenzie Oil Co. v. Omar Oil & Gas Co.*, 14 *Del. Ch.* 36, 46, 120 *A.* 852, 857. Creditors' rights are subject to be drawn within the administrative scheme of the statute whenever occasion for its operation arises. A mortgage creditor is not excepted from the statute's scope. As against creditors, however, the rights of the receivers can rise no higher than those of the corporation. *James Bradford Co. v. United Leather Co.*, 11 *Del. Ch.* 76, 97 *A.* 620; *Delaware Trust Co. v. Elder & Co.*, 12 *Del. Ch.* 263, 112 *A.* 370. As a corollary to this general principle, it follows that the appointment of a receiver does not have the effect of disturbing or interfering with existing liens. So far has this principle been recognized that a creditor was allowed, after a receiver had been appointed, to perfect the lien of his execution by a levy. *Denny v. Wilmington Ice & Coal Co.*, 14 *Del. Ch.* 352, 128 *A.* 123.

In the instant case there is no pretense of a right to destroy or in any way to lessen the force of the petitioner's mortgage lien. The lien is not questioned. The only thing that is questioned is whether the court should lend its consent that its receivers might be sued by the mortgagee in immediate foreclosure proceedings. That the possession of assets by the court's officers or the court's due and orderly

administration of the estate cannot be interfered with by suit or otherwise without its consent first had and obtained, is a general proposition which is not questioned. Because a lien exists with the incident of legal methods for its enforcement, it does not follow that the court is required as a matter of course to grant consent to the lienor on his mere asking that he may proceed to execution and sale and the consequent dispossession of the receiver and the disruption of the orderly administration of the estate. It is hardly to be conceived that the rule which requires consent of the court before a lien may be enforced against its receiver is founded on nothing more than a polite regard for the court's interposed presence as possessor of the *res*. If that be the reason for the rule, then of course the court should, as soon as the proprieties of courtesy have been satisfied by a respectful request, promptly grant the consent as a matter of right. The rule rests on something more substantial than that. It rests on a consideration of the general equities of the case. These take into account the right of the lien creditor not to have his legal priority either displaced or its value as effective security jeopardized; and the right of other parties in interest not to have their rights, though inferior, lost to them by the uncontrolled action of a senior creditor in pressing for immediate sale and satisfaction, to the disruption of the orderly administration of the entire assets and their most beneficial liquidation. Such would appear to be the primary purpose of the statute under which the receivers were appointed and in the light of which the mortgage was given and taken.

The granting of consent by the court that the receivers might be sued and their possession ultimately taken away, lies in the sound discretion of the court. The authorities so hold. Among them may be cited the following, some of which directly decide the question, and others of which by way of discussion or by necessary inference recognize it.

as the accepted view. *Slade v. Massachusetts Coal & Power Co.*, (C. C.) 188 *F.* 369; *Stahl v. Peerless Spring Mfg. Co.*, (D. C.) 13 *F.* (2d) 262; *Consumers Co. v. Goodrich Transit Co.*, (C. C. A.) 53 *F.* (2d) 972, *certiorari* denied, *First Union Trust & Sav. Bank v. Consumers Co.*, 286 *U. S.* 548, 52 *S. Ct.* 500, 76 *L. Ed.* 1284; *Meeker v. Sprague*, 5 *Wash.* 242, 31 *P.* 628; *Cherry v. Insull Utility Investments, Inc.*, (D. C.) 58 *F.* (2d) 1022.

The last cited case was reversed by the Circuit Court of Appeals whose opinion is reported under the caption of *Guaranty Trust Co. of N. Y. v. Fentress, et al.*, 61 *F.* (2d) 329. The reversal, however, was solely upon the ground that neither the pledgee nor the pledged assets were within the jurisdiction of the lower court and that the court's order was therefore beyond its power to make. There was no disapproval by the reversing tribunal of the trial court's views touching the question for which the opinion of the trial court is above cited.

In view of the fact that with respect to the status of a lienor there is no distinction between cases in bankruptcy and cases of equity receiverships (*Cherry v. Insull Utility Investments, Inc., supra*), the following authorities may be added to those already cited in support of the proposition that in such applications as the instant one, the granting of consent is addressed to the sound discretion of the court. *Allebach v. Thomas*, (C. C. A.) 16 *F.* (2d) 853; *In re Henry, et al.*, (D. C.) 50 *F.* (2d) 453.

There is no attempt here to alter or impair the lien of the mortgage. Refusal of consent to foreclose at this time is not a denial of the right. At best it merely affects the remedy by a postponement in the interest of other rights which the court under the statute is charged with the duty of recognizing and equitably protecting and safeguarding.

The cases cited by the petitioner do not appear to me on examination to conflict with the views above expressed.

A brief reference to those cases will be made in order to point out why, in my judgment, they are not in such conflict.

*Massey v. Camden & T. Ry. Co.,* 75 *N. J. Eq.* 1, 71 *A.* 241, was a case in which the Chancellor upon consideration of the merits deemed that leave to foreclose ought to be granted. The comment is justified, that consideration of the merits was unnecessary if the court was without discretion. It is to be noted, further, that the Chancellor exacted conditions upon the observance of which the leave was to be exercised, a circumstance that refutes the idea that he had no discretion in the matter.

*American Loan & Trust Co. v. Central Vermont R. Co., et al.,* (*C. C.*) 84 *F.* 917. In this case the court said that an application to foreclose would not be denied arbitrarily, but only for legal unfitness for the purposes when and where sought.

*Philadelphia Trust Co. v. Northumberland County Traction Co.,* 258 *Pa.* 152, 101 *A.* 970. In this case the lower court had refused an application to foreclose a mortgage given by one of the constituent companies in a merged corporation, for which receivers had been appointed, upon property which had been the constituent's, separate and apart from the other properties which, together with the mortgaged property, formed a system of trolley lines operated by the merged company. The court not only denied the requested leave, but denied to the mortgagee the right ultimately to enjoy its remedy of foreclosure by ordering all the properties to be sold by the receiver free and clear of the petitioning mortgagee's lien. There was thus no question in the case of whether the mortgagee should be delayed in the pursuit of the remedy which the contract of mortgage gave it, which is the question here. The remedy was completely denied to the mortgagee. The Supreme Court of Pennsylvania in the reported case held that the remedy was a part of the rights contracted for

in the mortgage and that the court no more than a legislature could take it away.

*Columbia & Montour Electric Co. v. North Branch Transit Co.*, 258 *Pa.* 447, 102 *A.* 214, is similar to the case just cited.

*Galey v. Guffy*, 248 *Pa.* 543, 94 *A.* 238, appears to have been decided on the same grounds that the two preceding cases cited from the Pennsylvania Supreme Court were decided upon, viz., that it is improper for a court which has appointed a receiver of assets to refuse leave to a mortgagee to foreclose under circumstances that show the refusal to be tantamount to a denial of the mortgagee's right to enjoy the remedy stipulated for. There was no question involved in the case, so far as the report shows, of whether the court had discretion to pass upon the advisability of foreclosure in respect to the time of its exercise. The case further was one where the receiver was appointed for an individual's assets. What the statute provided in such cases, if there was one, the report of the case does not show. At all events, if the case is to be understood as holding that, in such a case as the instant one, the court has no discretion in answering requests of the nature here presented, it is out of line with what appears to me to be the decided tenor of the authorities elsewhere.

*Nicholson v. Western Loan & Building Co.*, 60 *F.* (2d) 516. In this case the court below had granted leave to sue a receiver in foreclosure proceedings. The Circuit Court of Appeals after examination of the facts concluded on the merits that the trial court would have abused its discretion if it had declined the requested permission. The opinion necessarily assumes that the matter of granting the leave lies in the sound discretion of the court.

*In re S. H. Greene & Sons Corp.*, (*R. I.*) 131 *A.* 547, 548. An order of the lower court denying leave to foreclose against a receiver was reversed by the Supreme Court in the opinion reported in the cited case. It is clear that the

Supreme Court considered the granting of leave to be addressed to the court's sound discretion. The facts were examined and the refusal of leave was adjudged to have been improper. Said the reversing court: "Nothing appears which even tends to indicate that it would be beneficial to the receivers, creditors, or any one else to permit the receivers to remain longer in possession of the mortgaged property." This language very clearly shows that the Supreme Court of Rhode Island treated the question as one lying in the field of discretion.

*Needle, et al., v. Perfection Const. Co.,* 108 *N. J. Eq.* 312, 154 *A.* 878. The question of the court's discretionary power was not touched upon by the court.

In the foregoing I have, I believe, referred to and briefly commented on all of the cases cited by the petitioner in support of its position that the court has no discretion in matters of the pending kind. To the extent that they bear on the proposition, instead of supporting it they seem to me to oppose it. I have taken the pains to review the authorities because the question is an important one in connection with the administration of receivership estates and one which, though heretofore presented in this State and answered in practice in favor of the discretion, has never been made the subject of debate at the bar.

I have no doubt that an application for leave to sue the receiver either by way of foreclosure or otherwise is addressed to the court's discretion. But the discretion which the Chancellor exercises should not be an arbitrary one. The appeal is to his sound discretion and he should answer the appeal in the light of the facts and all relevant circumstances.

The owner of a mortgage cannot be denied his right to foreclosure. That is quite true. That means that, in the absence of statutory provisions, he cannot be compelled to submit to a sale by a receiver of the property covered by his mortgage free of its lien. His security cannot be im-

paired against his will by being made to bear receivership costs and expenses. These principles, however, do not amount to saying that in every case, no matter what the circumstances, the court should on his mere request consent that the receiver might be ousted of possession by immediate foreclosure proceedings.

The petition is to be answered according as the facts, interpreted in the light of what I conceive to be a sound discretion, would suggest.

The evidence shows the assets to have such value that I think the security of the mortgage would not be endangered or jeopardized if a reasonable delay were had in its foreclosure. The physical properties are being kept in good condition. The interest is not in arrears. It has every prospect of being earned and paid. Dividends from the Ferry stock alone, which is pledged, are more than ample to cover the interest. Efforts are being made which are confidently asserted to promise early success, to secure a refinancing of the mortgage loan. The reason for the receivership was the insistence of the holders of the bonds secured by the mortgage, who in the main were former owners of the assets, upon prompt payment of the issue upon its maturity. If the efforts at refinancing which are afoot are successful, the bond holders will be paid in full and the receivership terminated. It seems to me that under the facts shown it would be highly inequitable for the court to yield its consent to the institution of foreclosure proceedings at this time, because if it did so the likelihood is that the efforts of those who hold the junior equities to save something for themselves without damage or loss to the senior lienor would be frustrated. A reasonable delay does not appear to me to be prejudicial either to the security of the bonds or to their current yields.

Before concluding this opinion I feel it my duty to give notice to those who are in charge of the negotiations for a refinancing, that protracted delays in bringing them

to a conclusion will not be regarded as favorable to their successful completion, and if such delays are drawn out for what appears an unreasonable length of time the leave which is now so strenuously opposed will be granted upon renewal of a request therefor. At the hearing the details of the negotiations were not disclosed. I can understand why secrecy is perhaps desirable in such matters. But there will soon come a time in all probability when mere assurances will have to be supplemented by accomplished facts. It is needless to say that while the Court of Chancery was styled by Chancellor Curtis in *Deputy v. Delmar Lumber Mfg. Co.*, 10 *Del. Ch.* 101, 85 *A.* 669, as a harbor of refuge for corporations in financial distress, it supplies no mooring ground for unduly prolonged anchorage.

The leave will be denied.